UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
EVERETTE HALLFORD,                          :

                                            :        12 Civ. 1806 (WHP)

                Plaintiff,         :        MEMORANDUM & ORDER

      -against-                            :

FOX ENTERTAINMENT GROUP, INC., *et al.*,    :

              Defendants.         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

        Plaintiff Everette Hallford brings this copyright infringement action against

Defendant Fox Entertainment Group, Inc. and others affiliated with the television program

*Touch*. Defendants Fox Entertainment Group, Inc., Peter F. Chernin, Chernin Entertainment

LLC, Richard Timothy Kring, and Kiefer Sutherland move to dismiss Hallford's amended

complaint. For the following reasons, Defendants' motion is granted and the amended complaint

is dismissed.

## BACKGROUND

        Hallford alleges that *Touch* is substantially similar to his screenplay *Prodigy* and

infringes his copyright.

### I. Hallford's *Prodigy*

        *Prodigy* tells the story of Frank Glen, an investigative journalist who, with the

help of an autistic boy named Jonathan, solves a mystery about a man who prevented a train

accident. *Prodigy* explores Frank's loss of his wife, his recurring nightmares of a train accident,

and Jonathan's struggle to communicate with the outside world. (Declaration of Jonathan Zavin,

dated July 6, 2012 ("Zavin Decl."), Ex. A: *Prodigy* ("*Prodigy*"), at 15.)

Jonathan is "in practical terms [ ] an orphan." (*Prodigy* at 7.) His father
abandoned him and he spent most of his life in institutions. He "lives in a world where
everything around him is in reverse." (*Prodigy* at 9.) He wishes to speak to others, but,
whenever he attempts to do so, his speech comes out backwards. (*Prodigy* at 7.) Frank is able to
communicate with Jonathan by playing his speech backward after recording it on a tape-recorder.
(*Prodigy* at 9.) Frank discovers that Jonathan is able to connect seemingly random events.
According to Frank, Jonathan possesses "a capacity for empathy so developed that he not only
experiences the intense emotional states of other people, but he can experience some of their
thoughts as well." (*Prodigy* at 37.) Frank bonds with Jonathan and they become friends.
(*Prodigy* at 78.)

Later, Frank and Jonathan visit the site of a narrowly averted train accident.
There, Jonathan helps Frank find the business card of the man who prevented the train collision.
Jonathan then collapses and is rushed to a hospital. (*Prodigy* at 92.) At the hospital, all of the
characters come together for a vigil while Jonathan is in a coma. (*Prodigy* at 123.) When
Jonathan awakens, his reverse speech disorder is cured, and he reconciles with his father.
(*Prodigy* at 122.) Frank then interviews the man who saved the train and writes a story about it.
*Prodigy* ends with the main characters celebrating Jonathan's birthday. (*Prodigy* at 131.)

II. Fox's *Touch*

*Touch* is television series on Fox. It is the story of a boy and his father, Martin
Bohm, a baggage handler at JFK airport. Martin cannot communicate with his son, Jake. (Zavin
Decl. Ex. C: Pilot ("*Touch* Pilot"), at 1:17-1:32.) But when Martin discovers that Jake can

2

predict events before they happen, he finds a way to connect to his son. Jake has a gift for mathematical patterns and the ability to see how various people are destined to find one another. With the help of his father, Jake connects people whose lives should touch.

The pilot weaves together seemingly unrelated plotlines, which eventually coalesce through a single cellular telephone. Jake repeatedly runs away and climbs a cellular telephone tower at precisely 3:18 p.m. As a result, Child and Family Services dispatches Clea Hopkins to investigate whether Martin is able to take care of his son. Clea learns that Jake cannot talk and hates to be touched, even by his father. (*Touch* Pilot at 16:10-16:26.) She removes Jake to an institution that cares for autistic children. While Jake is gone, Martin attempts to decipher the clues that Jake left him. Following these clues, Martin finds Professor Arthur Teller of the Teller Institute who explains Jake's unique ability to Martin. During the pilot, Jake connects the lives of his father, another father who is searching for a cell phone containing photos of his daughter, an Iraqi teen who desperately needs an oven for his family, a promising singer in Dublin, and a New York firefighter who wins the lottery.

DISCUSSION

I. Standard of Review

On a motion to dismiss, a court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in plaintiff's favor. See Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998). Nonetheless, "factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 540 U.S. 544, 556 (2007)

3

(requiring plaintiff to plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [his claim]"). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 555 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citation omitted). "A court ruling on such a motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." Anderson News, LLC, et al. v Am. Media Inc., et al., 680 F.3d 162, 185 (2d Cir. 2012). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

A court's "consideration [on a motion to dismiss] is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).

II. Copyright Infringement

"[A] copyright does not protect an idea, but only the expression of an idea." Williams v. Crichton, 84 F.3d 581, 587 (2d Cir. 1996) (internal quotation marks omitted). "The distinction between an idea and its expression is an elusive one." Williams, 84 F.3d at 587-88. The Second Circuit has often relied on Judge Hand's explanation of the distinction:

Upon any work, . . . a great number of patterns of increasing generality

4

> will fit equally well, as more and more of the incident is left out. The last
> may perhaps be no more than the most general statement of what the
> [work] is about, and at times might consist only of its title; but there is a
> point in this series of abstractions where they are no longer protected,
> since otherwise the [author] could prevent the use of his 'ideas,' to which,
> apart from their expression, his property is never extended.

Williams, 84 F.3d at 588 (quoting Nichols v. Universal Pictures Corp., 45 F.2d 119, 121 (2d Cir.

1930). Thus, "the inquiry often turns on the level of abstraction or generalization of the works

being compared." Attia v. Soc'y of N.Y. Hosp., 201 F.3d 50, 54 (2d Cir. 1999).

 Nor does copyright protect "scenes a faire," which are "sequences of events that

necessarily result from the choice of a setting or situation." Williams, 84 F.3d at 587 (internal

quotation marks omitted); see also Walker, 784 F.2d at 50 (finding that "drunks, prostitutes,

vermin and derelict cars" were scenes a faire because they would appear in any realistic work

about police in the South Bronx).

 "In order to establish a claim of copyright infringement, a plaintiff with a valid

copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and

(2) the copying is illegal because a substantial similarity exists between the defendant's work and

the protectible elements of plaintiff's." Gaito, 602 F.3d at 63 (internal quotation marks omitted).

Courts generally assume for the purposes of a motion to dismiss that the first element is satisfied

and focus instead on whether a substantial similarity exists between the works. See Gal v.

Viacom Int'l, Inc., 403 F. Supp. 2d 294, 299 (S.D.N.Y. 2005); see also Gaito, 602 F.3d at 63.

 Because "the question of substantial similarity typically presents an extremely

close question of fact, questions of non-infringement have traditionally been reserved for the trier

of fact." Gaito, 602 F.3d at 63 (internal citations omitted). But the Second Circuit has

5

"repeatedly recognized that, in certain circumstances, it is entirely appropriate for a district court to resolve that question as a matter of law, either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." Gaito, 602 F.3d at 63 (internal quotation marks omitted). "When a court is called upon to consider whether the works are substantially similar, no discovery or fact-finding is typically necessary, because what is required is only a visual comparison of the works." Gaito, 602 F.3d at 64. When "the works in question are attached to a plaintiff's complaint, it is entirely appropriate for the district court to consider the similarity between those works in connection with a motion to dismiss because the court has before it all that is necessary in order to make such an evaluation." Gaito, 602 F.3d at 63-64. "In copyright infringement actions, the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings." Gaito, 602 F.3d at 64 (internal quotation marks and citations omitted).

The Second Circuit's standard on substantial similarity offers district courts little guidance because it blurs the distinction between questions of fact "traditionally reserved for the trier of fact" and questions of law reserved for the district court. Gaito, 602 F.3d at 63-64; see also 3 William F. Patry, Patry on Copyright § 9:86.50 (2008). It is hard to discern the difference between the legal analysis a district judge undertakes at the motion to dismiss stage when the works in question are attached, and the factual analysis the same judge undertakes during a bench trial. See, e.g., Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc., 490 F.2d 1092, 1093 (2d Cir. 1974) (finding infringement as a matter of law and noting "we may in a real sense be

6

factfinding"). The uncertainty of this distinction has the potential to remove questions of fact from a jury, authorize district judges to resolve such questions, and empower appellate judges to review what are essentially factual determinations de novo. See, e.g., Soptra Fabrics, 490 F.2d at 1094 (reversing a district court's finding that there was no substantial similarity and observing that "perhaps the error was really the result of a young district judge's failure to appreciate with the wisdom and experienced eye that only middle age can bring to the subject of feminine wear the substantial similarity we appellate judges discern"). Nevertheless, this Court is bound by the Second Circuit's standard, and resolution of this case at the pleading stage is therefore appropriate.

Substantial similarity involves many aspects of a work, including "the total concept and theme, characters, plot, sequence, pace, and setting." Williams, 84 F.3d at 588. "The standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same." Gaito, 602 F.3d at 66 (internal quotation marks omitted). This ordinary observer test asks "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." Gaito, 602 F.3d at 66 (internal quotation marks omitted). When works "have both protectible and unprotectible elements," a court applies a "more discerning" test and "must attempt to extract the unprotectible elements from [its] consideration and ask whether the protectible elements, standing alone, are substantially similar." Gaito, 602 F.3d at 66 (internal quotation marks omitted); 3 William F. Patry, Patry on Copyright § 9:137 (2008) ("Where the parties' works contain a significant amount of public domain material, the court of appeals . . . requires that . . . public domain trees

7

be left out of the forest."). Under either approach, a court is "principally guided by comparing the contested design's total concept and overall feel with that of the allegedly infringed work, as instructed by our good eyes and common sense." Gaito, 602 F.3d at 66 (internal citations and quotation marks omitted).

III. Application

Hallford's amended complaint contains a single cause of action against Defendants for infringing his *Prodigy* copyright. (Compl. ¶ 62-69.) Despite this, Hallford argues that the Court should also consider *Touch*'s similarity to another of his earlier works, a novel titled *Visionary*. Specifically, Hallford argues that *Touch* is a "remolecularized version of *Prodigy* and *Visionary*," and that when *Touch* is viewed against both works, his complaint states a claim for copyright infringement. (Compl. ¶ 62-69.) But such a comparison fails for two reasons. First, copyright infringement requires substantial similarity between a protected work and an infringing work. To state a claim, Hallford cannot mix and match alleged similarities between *Touch* and other works that are not related to one another. Second, *Touch* and *Visionary* bear no similarities. *Visionary* involves a reporter named Jim Jacobsen who is sent to cover Nigel Fox, a prophet-like figure. After Nigel is killed, Jim comes to learn that Nigel was his father. Aside from a passing reference to characters in *Prodigy*—Nigel's mention of his interview with Frank Glen—*Visionary* is entirely dissimilar to both *Touch* and *Prodigy*. (Zavin Decl. Ex. B: *Visionary* ("*Visionary*"), at 462.) Accordingly, this Court turns to the similarities between *Prodigy* and *Touch*.

According to Hallford, the similarities between *Prodigy* and *Touch* are legion. These similarities include, among others, that both works are set in New York and that the names

8

of both of the main characters begin with the letter "J." (Compl. ¶ 42, 54.) This Court need not address every alleged similarity because "the works themselves supersede and control[.]" Gaito, 602 F.3d at 64 (internal quotation marks and citations omitted). And lists of similarities "are 'inherently subjective and unreliable, particularly where 'the list emphasizes random similarities scattered throughout the works.'" Williams, 84 F.3d at 590 (quoting Litchfield v. Spielberg, 736 F.2d 1352, 1356 (9th Cir. 1984)). "Such a scattershot approach cannot support a finding of substantial similarity because it fails to address the underlying issue: whether a lay observer would consider the works as a whole substantially similar to one another." Williams, 84 F.3d at 590.

Here, the average lay observer—no matter how discerning—would not recognize that *Touch* was appropriated from *Prodigy* because this is not "one of those relatively unusual cases" where the infringing work copies the "particular" or "same" selections made in the copyrighted work, and the two works are different in total concept and overall feel. Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127 (2d Cir. 2003); Gaito, 602 F.3d at 66.

First, the plot and sequence of *Prodigy* and *Touch* are substantially different. *Prodigy* is essentially a mystery story wherein a reporter for a parapsychology journal bonds with a young autistic child who helps him discover how a man prevented a train accident. *Touch*, by contrast, is a fast-paced work that cuts among multiple plotlines across multiple countries. In the first episode alone, Jake's ability prevents a suicide bombing, restores a family's livelihood, saves children on a school bus, comforts grieving parents, and launches a singing career. In *Touch*, Jake operates as "an air traffic controller[] for . . . interconnectivity" to

ensure that particular people meet at particular moments in order to avoid catastrophe. (*Touch* Pilot at 28:25-28:45.)

Second, the characters of *Prodigy* and *Touch* are not substantially similar. "In determining whether characters are similar, a court looks at the totality of the characters' attributes and traits as well as the extent to which the defendants' characters capture the total concept and feel of figures in plaintiff's work." Sheldon Abend Revocable Trust v. Spielberg, 748 F. Supp. 2d 200, 208 (S.D.N.Y. 2010). "The bar for substantial similarity in a character is set quite high." Allen v. Scholastic Inc., 739 F. Supp. 2d 642, 660 (S.D.N.Y. 2011) (internal quotations omitted).

While both Jonathan and Jake have special powers and exhibit symptoms that resemble autism, the boys are fundamentally different. Jonathan is autistic but is later cured of his symptoms. (*Prodigy* at 122.) He speaks to characters by playing back a tape recording. (*Prodigy* at 9.) Jonathan is "practical[ly] an orphan" and longs for someone to talk to him. (*Prodigy* at 13.) He enjoys being touched. (*Prodigy* at 27.) Jake, by contrast, is never diagnosed with autism, even though he exhibits similar symptoms. He refuses to speak to anyone, even his father, and prefers to communicate by means of symbols and coded messages that lead his father to make connections with other people. Unlike Jonathan, whose father abandoned him, Jake has a loving father who will go to any length to keep him from being taken away. But, despite this, Jake cannot bear to be touched by his father or anyone else. (*Touch* Pilot at 16:10-16:26.)

Additionally, other characters in *Prodigy* and *Touch* are not substantially similar. In *Prodigy*, the main character, Frank Glen, is a freelance investigative journalist who is working

10

on an assignment for a parapsychology journal. Frank is a childless widower who is very close to his sister. In *Touch*, the main character, Martin Bohm, is a successful journalist who quit his job in order to care for his son after his wife died. While Frank and Martin are both widowers, that fact does not render them substantially similar. See DiTocco v. Riordan, 815 F. Supp. 2d 655, 668 (S.D.N.Y. 2011). Frank is not Jonathan's father; he is merely his friend. Frank's motivation is to solve a mystery. By contrast, Martin is Jake's father and his drive to decipher his son's cryptic messages stems from a parental desire to communicate.

Third, the themes of both works concern interconnectedness. Each reveals various characters coming together. In *Prodigy*, the characters solve a mystery together and provide an emotional support system for a young boy. In *Touch*, a young boy brings together various characters whose lives must touch to avert calamity. *Touch*'s theme of connection also extends to Martin and Jake. In helping his son bring lives together, Martin is able to communicate with his son. At the broadest level, *Prodigy* and *Touch* are similar in theme.

But copyright does not protect such breadth. "[T]he essence of infringement lies in taking not a general theme but its particular expression through similarities of treatment, details, scenes, events and characterization." Effie Film, LLC v. Pomerance, --- F. Supp. 2d ----, 2012 WL 6584485, at *14 (S.D.N.Y. Dec. 18, 2012) (citing Reyher v. Children's Television Workshop, 533 F.2d 87, 90-91 (2d Cir. 1976)). The shared similarities must be more than just generalized ideas or themes. Cabell v. Sony Pictures Entm't, Inc., 714 F. Supp. 2d 452, 459 (S.D.N.Y. 2010) (citing Walker, 784 F.2d at 48). Interconnectedness is not a protectable theme. And the themes in *Prodigy* and *Touch* are only similar in that they each address this non-protectible idea.

11

Fourth, the setting and pace of *Prodigy* and *Touch* are different. *Prodigy* is a relatively slow-paced drama set in New York and rural Pennsylvania. *Touch*, by contrast, features multiple stories from all around the world. Its pace is frenetic. Both works feature scenes in New York City. But the setting of New York City is not a protectible element of a copyrighted work. Sinicola v. Warner Bros., Inc., 948 F. Supp. 1176, 1189 (E.D.N.Y. 1996); Littel v. Twentieth Century Fox Film Corp., 89 Civ. 8526 (DLC), 1995 WL 404939, at *15 (S.D.N.Y. July 7, 1995).

Finally, the total concept and feel of the works are not similar. While *Prodigy* and *Touch* are stories about human connection, they are fundamentally different. In *Prodigy*, an investigative journalist who is haunted by the loss of his wife grows to care for an autistic child who cannot communicate with the outside world. Together, they discover how a train accident was narrowly averted. Through their time together, both of them are changed. Frank learns to make new relationships. Jonathan learns to speak. *Prodigy* is about the family forged through unlikely connections around Jonathan. But *Touch* is less about family and more about fate. In *Touch*, Jake reveals the "red thread of fate" that binds together people whose lives are destined to touch. (*Touch* Pilot at 0.23-1:16). Jake is able to facilitate those connections among people, and in doing so, he changes the world. *Touch* is about the mystery of Jake's power and Jake and Martin's ongoing mission to ensure that particular people meet at particular moments in order to avoid catastrophe.

Because *Prodigy* and *Touch* are not substantially similar, Hallford's complaint fails to state a claim for copyright infringement. For this reason, the complaint also fails to state a claim against non-moving party Defendant Tailwind Productions. Wachtler v. County of

Herkimer, 35 F.3d 77, 82 (2d Cir. 1994); Hecht v. Commerce Clearing House, 897 F.2d 21, 26 n.6 (2d Cir. 1990).

## CONCLUSION

For the foregoing reasons, Defendants Fox Entertainment Group Inc., Peter F. Chernin, Chernin Entertainment LLC, Richard Timothy Kring, Tailwind Productions, and Kiefer Sutherland's motion to dismiss Hallford's amended complaint is granted.  The Clerk of the Court is directed to terminate all pending motions, mark this case as closed, and enter judgment for Defendants.

Dated: February 13, 2013
       New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record*:

Joseph D. Nohavicka
Mavromihalis Pardalis & Nohavicka, LLP
3403 Broadway
Astoria, NY 10006
*Counsel for Plaintiff*

Jonathan Zavin
Loeb & Loeb LLP
345 Park Avenue
New York, NY 10154
*Counsel for Defendants*

13